IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 3, 2020

FILED
11/18/2020
Clerk of the
Appellate Courts

# IN RE HASKEL S.

**Appeal from the Juvenile Court for Van Buren County**
**No. 1036      Sammie E. Benningfield, Jr., Judge**

_____

## No. M2019-02256-COA-R3-PT

_____

In this termination of parental rights case, Appellant/Father appeals the trial court's termination of his parental right to the minor child on the grounds of: (1) abandonment by an incarcerated parent by willful failure to visit, willful failure to support, and wanton disregard, Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(iv); (2) substantial noncompliance with the requirements of the permanency plan, Tenn. Code Ann. § 36-1-113(g)(2); and (3) failure to manifest a willingness and ability to parent the child, Tenn. Code Ann. § 36-1-113(g)(14).   Appellant also appeals the trial court's finding that termination of his parental rights is in the child's best interest.  We reverse the trial court's termination of Father's parental rights on the grounds of abandonment by an incarcerated parent for failure to visit and support.  We affirm the trial court's termination of Father's parental rights on all remaining grounds and on its finding that termination of Father's parental rights is in the child's best interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed in Part, Affirmed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Michael J. Rocco, Sparta, Tennessee, for the appellant, Richard B.[1]

Herbert H. Slatery, III, Attorney General and Reporter, and Amber L. Seymour, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

# OPINION

## I. Background

Haskel S. (d/o/b August 2014) (the "Child") was born out-of-wedlock to Appellant Richard B. ("Father") and Lauren D. On March 7, 2019, Lauren D. surrendered her parental rights to the Child, and she is not a party to this appeal. After DNA testing revealed that Richard B. is the Child's biological parent, the Juvenile Court of Van Buren County ("trial court") entered an order, on August 10, 2018, establishing Father's paternity.

On May 1, 2017, the Child was placed in the custody of Appellee Tennessee Department of Children's Services ("DCS") on allegations of dependency and neglect due to mother's living conditions and drug use in the home. The Child has remained in foster care since that time. On July 6, 2017, the trial court adjudicated the Child to be dependent and neglected as to Father.

Father has a long criminal history, including assault, disorderly conduct, possession, driving on a revoked or suspended license, and probation violation. He has been incarcerated numerous times throughout these proceedings, and he was incarcerated at the time of the hearing on DCS's petition to terminate his parental rights.

Despite his myriad incarcerations, DCS worked with Father to develop three permanency plans, i.e., May 17, 2017, January 29, 2018, and July 26, 2018. Each of the plans was ratified by the trial court and admitted into evidence at the hearing on the petition to terminate Father's parental rights. Father's requirements under the plans included: (1) resolve his legal issues and refrain from obtaining new charges; (2) obtain safe and stable housing; (3) complete an alcohol and drug consultation and follow the recommendations; (4) obtain and maintain sobriety; (5) submit to random drug screens; (6) visit the child twice per month; (7) not associate with known drug users; and (8) maintain a bond and relationship with the Child. In ratifying the permanency plans, the trial court held that the foregoing requirements were reasonable and related to remedying the conditions that necessitate foster care. Father does not dispute this finding.

On January 25, 2019, DCS filed its petition to terminate Father's parental rights. As grounds, DCS averred: (1) abandonment by an incarcerated parent for failure to support; (2) abandonment by an incarcerated parent for failure to visit; (3) abandonment by wanton disregard; (4) substantial noncompliance with the requirements of the permanency plan; and (5) failure to manifest an ability and willingness to assume custody. The trial court appointed a guardian ad litem for the child and appointed counsel to represent Father.

After several continuances, the trial court heard the petition to terminate Father's parental rights on October 25, 2019. As discussed below, in her opening statement, DCS's attorney announced that DCS would not pursue the ground of abandonment by an incarcerated parent for failure to support. The trial proceeded on the remaining grounds alleged in the petition, *supra*. Father did not testify, nor did he offer any countervailing evidence. The only testimony was from DCS caseworkers, Sherri Phillips and Michelle Barronhagarty, and from the Child's foster father, Mark B.

By order of November 27, 2019, the trial court terminated Father's parental rights on the grounds of: (1) abandonment by an incarcerated parent for failure to support; (2) abandonment by an incarcerated parent for failure to visit; (3) abandonment by wanton disregard; (4) substantial noncompliance with the requirements of the permanency plan; and (5) failure to manifest an ability and willingness to assume custody. The trial court also found, by clear and convincing evidence, that termination of Father's parental rights is in the Child's best interest. Father appeals.

## II. Issues

We state the dispositive issues as follows:

1. Whether there is clear and convincing evidence to support at least one of the grounds relied upon by the trial court to terminate Father's parental rights.

2. Whether termination of Father's parental rights is in the Child's best interest.

## III. Standard of Review

The Tennessee Supreme Court has previously explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors....' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455

U.S. 745, 747, 102 S.Ct. 1388, 71 L. Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522-23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute, which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove: (1) the existence of one of the statutory grounds; and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. *Santosky*, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination of parental rights cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W.3d at 523-24 (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007)). The Tennessee Supreme Court has explained that:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 524.

Furthermore, it is well settled that if the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). Therefore, this Court "gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837). Here, at the close of proof, the trial court found that

> none of the witnesses' credibility has been impeached in any regard, and . . . the Court would have no reason to reject any of their testimonies . . . as unbelievable, and so, finds the witnesses to be, in every respect, credible and . . . their testimony is believed by the Court.

## IV. Grounds for Termination of Father's Parental Rights

Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n. 14 (Tenn. 2010). Accordingly, we will review all of the foregoing grounds.

### A. Abandonment by an Incarcerated Parent

Tennessee Code Annotated section 36-1-113(g)(1) allows for termination of parental right where "[a]bandonment by the parent or guardian, as defined in § 36-1-102, has occurred." DCS filed its petition to terminate Father's parental rights on January 25, 2019. At that time, Tennessee Code Annotated section 36-6-102(1)(A)(iv) defined abandonment by an incarcerated parent as follows:

> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has failed to visit or has failed to support or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. If the four-month period immediately preceding the institution of the action or the four-month period immediately preceding such parent's incarceration is

interrupted by a period or periods of incarceration, and there are not four (4) consecutive months without incarceration immediately preceding either event, a four-month period shall be created by aggregating the shorter periods of nonincarceration beginning with the most recent period of nonincarceration prior to commencement of the action and moving back in time. Periods of incarceration of less than seven (7) days duration shall be counted as periods of nonincarceration. . . .  A finding that the parent has abandoned the child for a defined period in excess of four (4) months that would necessarily include the four (4) months of nonincarceration immediately prior to the institution of the action, but which does not precisely define the relevant four-month period, shall be sufficient to establish abandonment. . . .

Tenn. Code Ann. § 36-1-102(1)(A)(iv).  The trial court held that Father's parental rights should be terminated on all three of the statutory definitions of abandonment, i.e., failure to support, failure to visit, and wanton disregard.  Under the foregoing definition, termination of an incarcerated parent's rights on the ground of either failure to support or failure to visit requires the court to consider the parent's visitation and support during a statutorily defined four-month period.  Concerning the relevant time period, in its petition to terminate Father's parental rights, DCS averred that:

23. The four month period for the measurement of abandonment under this ground would be determined by aggregating periods of non-incarceration beginning with the most recent period of non-incarceration prior to commencement of the action and moving back in time.
24. If the proof shows that [Father] was not incarcerated in the four month period prior to the filing of this petition, Petitioner pleads in the alternative that [Father] has willfully abandoned the child for the four consecutive months prior to the filing of this petition.

Then, in opening statements at the hearing on the petition to terminate Father's parental rights, counsel for DCS stated:

There is no four-month period of time that [Father] was not incarcerated, so pursuant to TCA 36-1-102 (1)(A)(iv), the relevant period of time would be created by aggregating the shorter periods of time of non-incarceration, beginning with the most recent period of non -incarceration prior to the commencement of the action and moving back in time. Also, periods of incarceration less than seven days are treated as periods of non - incarceration.
　　So, the relevant four—four-month period of time for the Court to look at is from September 25, 2018 to January 24th, 2019. So, September 25th, 2018, to January 24th, 2019.

In its order terminating his parental rights, the trial court found that

[Father] was incarcerated in the four months immediately preceding the filing of the petition. He was incarcerated from December 19, 2018, to December 21, 2018, in Van Buren County. Prior to that he was incarcerated as follows: from September 21, 2018, to September 22, 2018, in Bledsoe County; from August 21, 2018, to August 23, 2018, in Van Buren County; from July 24, 2018, to July 25, 2018, in Bledsoe County; from June 12, 2018, to June 15, 2018, in Sequatchie County; from May 17, 2018, to June 4, 2018, in Bledsoe County; on May 9, 2018, in Cumberland County; on March 29, 2018, in Bledsoe County; from March 20, 2018, to March 26, 2018 in Bledsoe County; from January 17, 2018, to January 18, 2018, in Bledsoe County; from May 11, 2017, to October 30, 2017, in Van Buren County; and from May 1, 2017, to May 11, 2017, in Sequatchie County.

There is no four month period of nonincarceration for Mr. Bolin; therefore, the relevant four month period must be aggregated. When aggregating, periods of incarceration that are less than seven days duration are counted as periods of nonincarceration. With that in mind, the relevant four month period of time would be from September 24, 2018, through January 24, 2019.

In footnote 6 of its responsive brief, DCS concedes that the trial court applied the incorrect four-month period but argues that this error does not necessitate reversal: "Although the trial court applied the incorrect statutory period, the record still supports a finding that Father failed to visit during the correct statutory period. . . ." Yet, it appears DCS did not settle on the "correct statutory period" at any time during these proceedings, up to and including the appeal. In arguing the ground of abandonment in its brief, DCS states a date range different from the date range it stated at the hearing:

Here the termination petition was filed on January 25, 2019. During the four months preceding the petition, Father was incarcerated on October 3, 2018, and November 6, 2018. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv) (requiring that "the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding").

Father also was incarcerated during the four-month period preceding his October 3, 2018 incarceration [fn. 4: Tenn. Code Ann. § 36-1-102(1)(A)(iv) (examining whether the parent "has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration")]: he was incarcerated from June 12, 2018, through June 15,

2018; from July 24, 2018, through July 25, 2018; and from August 21, 2018, through August 23, 2018. However, these periods of incarceration were each less than seven days. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv) [fn. 5 Tennessee Code Ann. § 36-1-102(1)(A)(iv) provides, "If the four-month period immediately preceding the institution of the action or the four-month period immediately preceding such parent's incarceration is interrupted by a period or periods of incarceration, and there are not four (4) consecutive months without incarceration immediately preceding either event, a four-month period shall be created by aggregating the shorter periods of nonincarceration beginning with the most recent period of nonincarceration prior to the commencement of the action and moving back in time. Periods of incarceration of less than seven (7) days duration shall be counted as periods of nonincarceration."]. And "[p]eriods of incarceration of less than seven (7) days duration shall be counted as periods of nonincarceration." Because these periods of incarceration count as periods of nonincarceration, there are four (4) consecutive months without incarceration immediately preceding Father's October 2018 incarceration. No aggregation is necessary, and the relevant four-month period is from June 2 to October 2, 2018.

This Court has cautioned that

[t]he statute is very specific for an incarcerated parent with regard to the relevant time period, limiting the analysis with regard to a failure to support to the period of "four (4) consecutive months immediately preceding such parent's or guardian's incarceration...." Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2010). "As we have previously opined, courts must 'strictly apply the procedural requirements in cases involving the termination of parental rights.'*" In re: Landon H.*, No. M2011-00737-COA-R3-PT, 2012 Tenn. App. LEXIS 24, at \*11, 2012 WL 113659 (Tenn. Ct. App. Jan.11, 2012), no appl. perm. appeal filed (quoting *Weidman v. Chambers*, No. M2007-02106-COA-R3-PT, 2008 Tenn. App. LEXIS 338, at \*16, 2008 WL 2331037 (Tenn. Ct. App. June 3, 2008), no appl. perm. appeal filed ).

*In re Eimile A.M.*, No. E2013-00742-COA-R3-PT, 2013 WL 6844096, \*3 (Tenn. Ct. App. Dec. 26, 2013). Likewise, in recent case of *In re A.V.N.*, this Court stated:

We again emphasize that "courts must strictly comply with procedural requirements in termination of parental rights cases." *In re Landon H.*, No. M2011-00737-COA-R3-PT, 2012 WL 113659, at \*6 (Tenn. Ct. App. Jan. 11, 2012) (citing *Weidman v. Chambers*, No. M2007-02106-COA-R3-PT, 2008 WL 2331037 (Tenn. Ct. App. June 3, 2008)). One such procedural requirement is that parents must be afforded sufficient

notice of the ground being sought for termination of parental rights. *See id*. Unless the ground is tried by implied consent, if the ground is not properly pled, it cannot be considered as a potential ground for termination of parental rights. *See, e.g., **In re Justine J.***, No. E2019-00306-COA-R3-PT, 2019 WL 5079354, *8 (Tenn. Ct. App. Oct. 10, 2019); ***In re K.N.B.***, No. E2014-00191-COA-R3-PT, 2014 WL 4908505, at *13 (Tenn. Ct. App. Sept. 30, 2014); ***In re Eimile A.M.***, No. E2013-00742-COA-R3-PT, 2013 WL 6844096, at *5 (Tenn. Ct. App. Dec. 26, 2013). Similarly, when abandonment is pled as a potential ground for termination, the petitioner must include the correct four-month period. *See **In re Justine J.***, 2019 WL 5079354, at *8; ***In re D.H.B.***, No. E2014-00063-COA-R3-PT, 2015 WL 1870303, at *5 (Tenn. Ct. App. Apr. 23, 2015). If an incorrect four-month period is pled, the petition is deficient as a result of the parent being left without the notice required to defend against the petition. See ***In re D.H.B***., 2015 WL 1870303, at *5 (citing ***In re K.N.B.***, 2014 WL 4908505, at *13).

***In re A.V.N.***, No. E2020-00161-COA-R3-PT, 2020 WL 5496678, *8 (Tenn. Ct. App. Sept. 10, 2020). At a minimum, due process requires "notice reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ***Keisling v. Keisling***, 92 S.W.3d 374, 377 (Tenn. 2002) (quoting ***State v. Pearson***, 858 S.W.2d 879, 884 (Tenn. 1993)). In the first instance, based on DCS's petition, *supra*, it did not set out the correct four-month period so as to put Father on notice. Rather, DCS took an either-or approach, stating that either the four-month period should be aggregated or it should be the four months immediately preceding the filing of the petition. While we concede that the calculation of the correct statutory four-month period may prove difficult in cases, such as this, where the parent is frequently incarcerated, it is DCS's burden to arrive at the correct statutory period prior to filing its petition for termination of parental rights. Alternatively, the correct statutory period may be tried by consent of the parties. However, in this case, we cannot conclude that the four-month period was tried by consent because there was never a definitive agreement on what that period should be.

In addition to the mercurial four-month period, at the outset of the hearing on the petition to terminate Father's parental rights, counsel for DCS announced:

> The Department alleged several grounds in the petition, but today we'll proceed on the grounds of abandonment for failure to visit, abandonment by wanton disregard, substantial noncompliance with the permanency plan, and parent's failure to manifest an ability and willingness to personally assume legal and physical custody and financial responsibility for the child.

Then, in closing, DCS's counsel reiterated:

MS. JENNINGS: And then the Department would, also alleged abandonment for failure to support and then conceded and did not pursue it. Can the Court make a finding either way on that ground?

THE COURT: Well, it, it -- what do you mean you conceded?

MS. JENNINGS: We, we did not pursue it in our line of questioning.

THE COURT: Well, the, the proof was that he's made two, two payments toward support in, in two years, that he's had an opportunity -- of course, he's been, much of that time, he's, he's been in, in jail, but there was also proof, and I think this was elicited on examination by the Guardian ad Litem, that he was not in any respect disabled and was capable of working, he just didn't or he didn't support the child. So, for whatever reasons the Department concedes that, the Court finds he has not supported the child and he has abandoned the child in that respect, as well.

Although alleged in its petition to terminate Father's parental rights, DCS clearly withdrew the ground of abandonment by an incarcerated parent for failure to support. Nonetheless, the trial court relied on this ground in terminating Father's parental rights. This was error because the ground was withdrawn at trial.

For the foregoing reasons, we reverse the trial court's termination of Father's parental rights on the grounds of abandonment by an incarcerated parent for failure to visit and failure to support.

Although we reverse the trial court's termination of Father's parental rights on the grounds of abandonment by failure to support and visit, on the ground of abandonment by wanton disregard, Tennessee courts have consistently held that we are not limited to the four-month period preceding a parent's incarceration to determine whether the parent has engaged in conduct evidencing a wanton disregard for his or her children's welfare. *In re F.N.M.*, No. M2015-00519-COA-R3-PT, 2016 WL 3126077, at *3 (Tenn. Ct. App. Apr. 11, 2016); *see also Dep't of Children's Servs. v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009) ("parental conduct exhibiting wanton disregard for a child's welfare may occur at any time prior to incarceration and is not limited to acts occurring during the four-month period immediately preceding the parent's incarceration"). As such, the trial court's error in calculating the relevant four-month period does not negate its termination of Father's parental rights on the ground of abandonment by wanton disregard, and we will review this ground substantively.

Although incarceration itself is not a ground for the termination of a parent's rights, courts consider the incarceration a "triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866.

- 10 -

In its order terminating Father's parental rights, the trial court found:

> The Court finds that [Father] has engaged in conduct that exhibits a wanton disregard for the welfare of the child in that he has failed to visit the child, he has failed to support the child, he has continued to abuse alcohol and drugs, he has continued to commit crimes that keep him incarcerated, he is still incarcerated and facing criminal charges, he has done nothing to comply with the permanency plans, he has done nothing to obtain housing, and he does not have the ability to provide any of the necessities of life for his child.

As set out above, the statute does not define "wanton disregard." *In re H.A.L.*, No. M2005-00045-COA-R3-PT, 2005 WL 954866, at *6 (Tenn. Ct. App. Apr. 25, 2005). Nonetheless, Tennessee courts have held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.,* 182 S.W.3d at 867-68. "Our courts have consistently held that an incarcerated parent who has multiple drug offenses and wastes the opportunity to rehabilitate themselves by continuing to abuse drugs, resulting in revocation of their parole and reincarceration, constitutes abandonment of the child, and demonstrates a wanton disregard for the welfare of the child." *Dep't of Children's Servs. v. J.M.F.*, No. E2003-03081-COA-R3-PT, 2005 WL 94465, at *7 (Tenn. Ct. App. Jan. 11, 2005) (citing *In re C.T.S.*, 156 S.W.3d 18, 25 (Tenn. Ct. App. 2004); *Dep't of Children's Servs. v. J.S.*, No. M2000-03212-COA-R3-JV, 2001 WL 1285894, at *3 (Tenn. Ct. App. Oct. 25, 2001); *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000). Indeed, the enactment of Tenn. Code Ann. § 36-1-102(1)(A)(iv), *supra*, reflects the General Assembly's recognition that "parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child" and that "[i]ncarceration severely compromises a parent's ability to perform his or her parental duties." *In re Audrey S.*, 182 S.W.3d at 866. "The actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015).

Here, the record is replete with evidence of Father's recidivism. The evidence shows that Father was arrested or incarcerated numerous times during this Child's life. The Child was born in August 2014. Father was incarcerated in Sequatchie County from August 17, 2014 through May 11, 2017 for violation of probation. On his release from Sequatchie County, he was incarcerated in Van Buren County, from May 11, 2017 to October 20, 2017, for probation violation in that county. From January 17, 2018 to January 18, 2018, Father was incarcerated in Bledsoe County for assault; then he was re-incarcerated in Bledsoe County from March 20, 2018 to March 26, 2018 for disorderly

- 11 -

conduct. On March 29, 2018, he was cited in Bledsoe County for driving on a revoked or suspended license and was charged with the same offense in Cumberland County on May 9, 2018. Father was incarcerated from May 17, 2018 until June 4, 2018 in Bledsoe County on a bond revocation. On June 12, 2018, Father was arrested for simple possession and non-payment of fines in Bledsoe County; he was incarcerated until June 15, 2018. Then, on July 24, 2018, he was arrested in Bledsoe County for driving on a revoked or suspended license; he was released on July 25, 2018. However, on August 21, 2018, he was arrested in Van Buren County for failure to pay child support and was released on August 23, 2018. In January 13, 2019, he was arrested in Bledsoe County on vandalism charges. DCS filed its petition to terminate his parental rights on January 25, 2019. The hearing on the petition was held on October 25, 2019. Father was incarcerated at the time of the hearing. The record clearly and convincingly shows that Father has engaged in "behavior that resulted in incarceration[, which] is part of a broader pattern of conduct that renders [Father] unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866. As such, we conclude that the record supports the trial court's termination of Father's parental rights on the ground of abandonment by wanton disregard.

## B. Substantial Non-Compliance with the Permanency Plan

The trial court found, by clear and convincing evidence, that Father's parental rights should be terminated on the ground of failure to substantially comply with the requirements of the permanency plan. Tennessee Code Annotated Section 36-1-113(g)(2) provides that a parent's rights may be terminated when "[t]here has been substantial noncompliance by the parent . . . with the statement of responsibilities in a permanency plan."

"[T]he permanency plans are not simply a series of hoops for the biological parent to jump through in order to have custody of the children returned." *In re C.S., Jr., et al.*, No. M2005-02499-COA-R3-PT, 2006 WL 2644371, at \*10 (Tenn. Ct. App. Sept. 14, 2006). Rather,

> the requirements of the permanency plan are intended to address the problems that led to removal; they are meant to place the parent in a position to provide the children with a safe, stable home and consistent appropriate care. This requires the parent to put in real effort to complete the requirements of the plan in a meaningful way in order to place herself in a position to take responsibility for the children.

*Id.* As discussed by this Court in *In re M.J.B.*, 140 S.W.3d 643 (Tenn. Ct. App. 2004):

> Terminating parental rights based on Tenn. Code Ann. § 36-1-113(g)(2) requires more proof than that a parent has not complied with every jot and

tittle of the permanency plan. To succeed under Tenn. Code Ann. § 36-1-113(g)(2), the Department must demonstrate first that the requirements of the permanency plan are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place, *In re Valentine*, 79 S.W.3d 539, 547 (Tenn. 2002); *In re L.J.C.*, 124 S.W.3d 609, 621 (Tenn. Ct. App. 2003), and second that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met. *In re Valentine*, 79 S.W.3d at 548-49; *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at \*12 (Tenn. Ct. App. June 3, 2003). Trivial, minor, or technical deviations from a permanency plan's requirements will not be deemed to amount to substantial noncompliance. *In re Valentine*, 79 S.W.3d at 548.

*Id.* at 656-57. The Tennessee Supreme Court has explained that

[s]ubstantial noncompliance is not defined in the termination statute. The statute is clear, however, that noncompliance is not enough to justify termination of parental rights; the noncompliance must be substantial. Black's Law Dictionary defines "substantial" as "[o]f real worth and importance." Black's Law Dictionary 1428 (6th ed. 1990). In the context of the requirements of a permanency plan, the real worth and importance of noncompliance should be measured by both the degree of noncompliance and the weight assigned to that requirement.

*In re Valentine*, 79 S.W.3d 539, 548 (Tenn. 2002).

As discussed above, Father's requirements under the permanency plans were to: (1) resolve his legal issues and refrain from obtaining new charges; (2) obtain safe and stable housing; (3) complete an alcohol and drug consultation and follow the recommendations; (4) obtain and maintain sobriety; (5) submit to random drug screens; (6) visit the child twice per month; (7) not associate with known drug users; and (8) maintain a bond and relationship with the Child. In its order terminating his parental rights, the trial court found that Father

has completed nothing on his permanency plans. He remains incarcerated and facing criminal charges, he does not have housing, he has no relationship with the child, and he still has alcohol and drug abuse issues. In short, it has been the same old thing since this child has been in the custody of the Department. [Father] has not even tried to work his permanency plan.

- 13 -

The record supports the trial court's findings. Ms. Phillips testified that Father's drug and alcohol abuse and the incarcerations stemming from his behaviors while under the influence have been the primary concerns in this case. Although Ms. Phillips attempted to work with Father to address his drug and alcohol abuse, she testified that he refused to go to treatment. Instead, he continued to engage in behaviors that resulted in more criminal charges and incarcerations. Father's pattern of incarceration resulted in his inability to provide suitable housing for the Child and his inability to visit the Child so as to develop any parental bond. From the record, it is clear that Father failed to avail himself of the opportunities presented to him. As such, he has failed to comply with the reasonable and necessary requirements of the permanency plan. The trial court did not err in terminating his parental rights on this ground.

### C. Failure to Manifest a Willingness or Ability to Assume Custody

Tennessee Code Annotated section 36-1-113(g)(14) provides a ground for termination of parental rights when

> [a] parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14). This ground requires DCS to establish two separate elements by clear and convincing evidence. *In re Maya R*., No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7 (Tenn. Ct. App. Apr. 4, 2018) (citation omitted). First, DCS must prove that Father "failed to manifest 'an ability and willingness to personally assume legal and physical custody or financial responsibility of the child.'" *Id.* (quoting Tenn. Code Ann. § 36-1-113(g)(14)).[2] Second, DCS must prove that placing the Child in the Father's legal and physical custody would "pose a risk of substantial harm to the physical or psychological welfare of the child." *Id.*

---

[2] This Court is split over the proper interpretation of the first prong of Tennessee Code Annotated Section 36-1-113(g)(14). *See In re Ellie K*., No. M2019-01269-COA-R3-PT, 2020 WL 1943522, at *9-11. (Tenn. Ct. App. Apr. 23, 2020) (describing the Court's conflicting views on the first prong of the statute). The split concerns whether a parent must fail to manifest both an ability and willingness to assume custody or financial responsibility or whether a parent must fail to manifest either an ability or willingness to assume custody or financial responsibility. *Compare In re Ayden S*., No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018) with *In re Amynn K*., No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *14 (Tenn. Ct. App. June 20, 2018). By order of June 15, 2020, the Tennessee Supreme Court certified two questions for review on this issue of statutory interpretation involving the first prong of Tennessee Code Annotated section 36-1-113(g)(14). *See In re Nevaeh M.*, M2019-00313-SC-R11-PT.

In its order terminating his parental rights, the trial court found:

> 40. [Father] is currently incarcerated and facing new criminal charges; therefore, he is unable to personally assume legal and physical custody or financial responsibility for the child. He has spent the greater part of the last two years that the child has been in foster care committing crimes and becoming incarcerated. [Father] has shown that he is not willing to personally assume legal and physical custody or financial responsibility for the child by his failure to support the child, his failure to visit the child, his continued criminal activity, and his continued drug abuse.
>
> 41. Furthermore, placing the child in [Father's] legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child. [Father] cannot take care of a child while he is incarcerated. It would certainly cause this child physical harm to be placed in the physical custody of [Father] because [Father] is in jail. It would also cause psychological harm to be placed in the physical custody of [Father] because the child has bonded with his foster parents and is thriving in their home. The child has no relationship with [Father].

As discussed in detail above, Father's refusal to seek treatment for his drug and alcohol abuse has resulted in many incarcerations, which have rendered him unable to parent this Child. Even when faced with the petition to terminate his parental rights, Father refused to change his lifestyle. As Ms. Phillips testified:

> Even the day that he was served the last termination petition, I [] went to his mom's home, met with him, had him served, we even talked about his charges then, and he had told me that he was facing, he had a choice, either a year in jail or a year at a residential treatment facility. I offered to get him a bed somewhere, and he said, no, he'd rather spend a year in jail.

We can think of no clearer evidence of a parent's lack of a willingness or ability to parent a child that the parent's choosing incarceration over treatment for addiction. Father has made no efforts to change his behaviors so as to parent the Child. As such, we conclude that the trial court did not err in terminating his parental rights on this ground.

### V. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. ***White v. Moody***, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). As the Tennessee Supreme Court explained:

Facts considered in the best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d at 555 (citing *In re Audrey S.*, 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." *Id.* When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." *In re Audrey S.*, 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. *Id.* "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d)(2017).

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to this appeal, these factors include, but are not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has made such an adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status

- 16 -

would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support . . . .

Tenn. Code Ann. § 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. Aug. 11, 2005), *perm. app. denied* (Tenn. Nov. 21, 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S*., 182 S.W.3d at 877. As explained by this Court:

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*White v. Moody*, 171 S.W.3d at 194.

In its order terminating his parental rights, the trial court specifically considered each of the foregoing statutory factors and found that each weighed against Father. Specifically, the trial court found:

> 44. Tenn. Code Ann. § 36-1-113(i)(1) requires the court to consider whether the parent has made and adjustment of circumstances, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent. In this case, [Father] has done nothing to avail himself of the services offered to him. In fact, he elected to be incarcerated rather than go to drug treatment. [Father] has not adjusted his circumstances in the least degree. He continues to commit crimes, he continues to be incarcerated, he has not addressed his drug and alcohol issues, and he does not have a suitable home for the child.
>
> 45. Tenn. Code Ann. § 36-1-113(i)(2) requires the court to consider whether the parent has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible. In this case, [Father] has not made a lasting adjustment. He has made no adjustment at all. [Father] is in the same circumstance on the day of trial that he was when the case began. He was offered services, but he did not take

advantage of any of them. His case manager testified that she tried to get him into treatment, she tried to get him employment, and she tried to get him housing, but [Father] would not take advantage of anything that was offered to him.

46. Tenn. Code Ann. § 36-1-113(i)(3) requires the Court to consider whether the parent has maintained regular visitation or other contact with the child. The proof in this case is that [Father] has seen the child six times during the life of the dependency and neglect case. In the last year, he visited for three hours. The Court finds that [Father] has not maintained regular visitation or other contact with the child.

47. Tenn. Code Ann. § 36-1-113(i)(4) requires the Court to consider whether a meaningful relationship has otherwise been established between the parent or guardian and the child. In this case, as discussed above, the Court finds that there is no meaningful relationship between [Father] and the child.

48. Tenn. Code Ann. § 36-1-113(i)(5) requires the Court to consider the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition. The case manager testified that if the child were to have a change of caretakers, it would be detrimental to his well-being. When he first came into the care of the foster parents, he rarely spoke and had behavioral issues. Now, the child is thriving in the care of the foster parents. The foster parents' home is the only consistent home the child has known during his life.

49. Tenn. Code Ann. § 36-1-113(i)(6) requires the Court to consider whether the parent or other person living with the parent has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child or another child or adult in the family or household. The proof that [Father] has domestic assault charges shows that he has shown brutality toward another person in the household. Also, [Father] still has substance abuse issues that lead to neglect of the child.

50. Tenn. Code Ann. § 36-1-113(i)(7) requires the Court to consider whether the physical environment of the parent's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or their analogues as may render the parent consistently unable to care for the child in a safe and stable manner. The Court finds that jail is not healthy or safe for a child. Even if he were not incarcerated, [Father's] home would not be safe or appropriate. He would be living with his mother who has a criminal history. [Father] has criminal activity that must be resolved and substance abuse issues that would render his home unsafe for the child.

51. Tenn. Code Ann. § 36-1-113(i)(8) requires the Court to consider whether the parent's mental and/or emotional status would be detrimental to the child or prevent the parent from effectively providing safe and stable

care and supervision for the child. [Father] is currently awaiting sentencing. He has failed to complete any sort of rehabilitation program. These circumstances cause the Court to question his mental status. His criminal activity and drug use call his mental and emotional status into question and would be detrimental to the child.

52. Tenn. Code Ann. § 36-1-113(i)(9) requires the Court to consider whether the parent has paid child support. It has been established that [Father] has made a couple of payments. These payments are not consistent.

53. In addition to the best interest factors in the statute, the Court also considers the fact that the child has been in the same foster home for two years. During that time, the child has made substantial improvement in many areas of maturation. He is bonded with the resource parents and refers to them as "Mom" and "Dad." Furthermore, the foster parents wish to adopt the child.

54. The Court further finds that it is in the child's best interest to have permanency. [Father] cannot provide permanency.

For many of the reasons discussed above, the record supports the trial court's finding that termination of Father's parental rights is in the Child's best interest. Father has failed to make any change in his lifestyle and has refused any offer of assistance by DCS. He has remained incarcerated for most of the Child's life, and this fact has rendered him unable to visit the Child or to provide safe and stable housing for him. Ms. Phillips testified that Father visited the Child no more than three times during these proceedings. At one visit, she testified that the Child was playing with Father's hat, and Father became irritated and concerned that the Child would damage his hat. So, even in the brief interchanges between Father and Child, Father has been unable to show his ability to parent. As such, there is no meaningful relationship between Father and the Child. Ms. Phillips and Ms. Barronhagarty both testified that the Child does not refer to Father as his parent; rather he refers to his foster father, Mark B., as "daddy." Mark B. testified that the Child has bonded with the foster family, and they wish to adopt him. While in the care of his foster family, Mark B. testified that the Child has thrived. He is healthy and happy. To remove him from the only stable environment he has ever known would likely cause the Child great emotional distress. It is in the Child's best interest to be adopted into this family, where he is loved and cared for. The record clearly and convincingly supports the trial court's finding that termination of Father's parental rights is in the Child's best interest.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's termination of Appellant's parental rights on the grounds of abandonment by an incarcerated parent for failure to visit and support. We affirm the trial court's termination of Appellant's parental rights

- 19 -

on all other grounds and on its finding that termination of Appellant's parental rights is in the Child's best interest. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Richard B. Because Richard B. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

 

 

 

_____
KENNY ARMSTRONG, JUDGE